## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-cr-431 (RDM)** |
| **v.** | : | |
| | : | |
| **KYLE TRAVIS COLTON,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendant Kyle Travis Colton has pled guilty to one Class A misdemeanor, a violation of 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds). For the reasons set forth herein, the government requests that this Court sentence Colton to 3 months' incarceration, the middle of the applicable advisory Sentencing Guidelines range of 0 to 6 months, plus 12 months of supervised release. The government also requests that this Court impose 100 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution and a $25 special assessment.

### I.    Introduction

Defendant Kyle Colton, a 37-year-old former customer service employee with the California Department of Motor Vehicles, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Colton pled guilty to a violation of 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds).  The government's recommendation is supported by Colton's  (1) entrance into the U.S. Capitol Building through the Senate Wing Door just minutes after its initial breach, amid signs of the violent breach that were still fresh and obvious; (2) lengthy time inside the U.S. Capitol Building (over one hour), during which he traveled extensively throughout the Building, including outside of the House Chamber; and (3) blatant disregard of the United States Capitol Police's (USCP) commands for rioters to leave the U.S. Capitol, resulting in the officers have to physically push Colton towards the exit.

The Court must also consider that Colton's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Colton's crime support a sentence of 3 months' incarceration.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 34.

*Defendant Colton's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Colton attended the then-President's "Stop the Steal" rally at the Washington Monument. *See* ECF No. 34 at ¶ 8.  He wore a black jacket and a black knit hat and carried a royal blue, white and red flag, which at times was tied around his neck or the bottom half of his face. *See* Image 1.



*Image 1 – Photo of Colton (circled in yellow) at the "Stop the Steal" rally on January 6, 2021*

Colton left the rally and walked to the U.S. Capitol with other rioters.  He entered the restricted grounds of the U.S. Capitol and continued through the U.S. Capitol grounds towards the Senate Wing Door. *See* ECF No. 34 at ¶¶ 8-9.

Colton entered the U.S. Capitol Building at 2:16 p.m. through the Senate Wing Door—approximately 3 minutes after that door was first breached. When Colton entered the U.S. Capitol Building, broken glass from the Senate Wing Door and adjacent windows was strewn on the floor and an alarm was blaring. *See* ECF No. 34 at ¶ 10; *see also* Image 2. Colton paused and lifted his phone to take photographs and/or video, raised his fist, and then proceeded further into the U.S. Capitol building. *See* Sentencing Ex. 1 (video of Colton entering U.S. Capitol Building through Senate Wing Door) at 1:56 through 2:21.



*Image 2 – Screenshot from CCTV at 2:17 p.m. - Colton circled in yellow*

From there, Colton traveled through the Crypt, near the Memorial Doors, into the Rotunda, and through Statutory Hall. *See* ECF No. 34 at ¶ 12. At approximately, 2:35 p.m., a line of USCP officers stood at one end of the Statutory Hall Connector, trying to prevent rioters from entering the main entrance to the House Chamber. Colton joined a large mob outside the House Chamber. Some members of Congress and their staffers were being evacuated from the Chamber as others hid in the gallery awaiting word that it was safe to evacuate. *See* Image 3. U.S. Capitol Police

officers inside the House Chamber barricaded the door and drew their weapons to prevent rioters from entering.



*Image 3 – Screenshot from CCTV at 2:40 p.m. - Colton circled in yellow*

Colton remained outside the House Chamber for approximately fifteen minutes before walking back through Statutory Hall and joining a large mob inside the Rotunda at approximately 2:59 p.m.   Colton was in the Rotunda with the large mob of rioters as USCP formed a police line and attempted to clear the premises.   Colton was at the very front of the mob, close to and facing the USCP line.   *See* Images 4 - 6.



*Image 4 – Photo of Colton facing the USCP line in the Rotunda - Colton circled in yellow*



*Image 5 – Photo of Colton close to the USCP line in the Rotunda - Colton circled in yellow*



*Image 6 – Photo of Colton close to the USCP line in the Rotunda - Colton circled in yellow*

Despite the USCP's repeated commands for rioters to leave, Colton remained in the Rotunda. *See* ECF No. 34 at ¶ 14. A review of body worn camera (BWC) from a Metropolitan Police Department, Washington, D.C. (MPD) officer shows Colton in line with rioters during confrontations between rioters and police officers in the Rotunda. *See* Sentencing Ex. 2 (BWC of Colton near the police line in the Rotunda) at 00:16 through 1:42. At one point, Colton held a flagpole that another rioter previously used to assault an MPD officer. *Id*. at 1:31 through 1:35; *see also* Image 7. Colton returned the flagpole to the rioter. Sentencing Ex. 2 at 1:31 through 1:35.



*Image 7 – Screenshot of BWC (Sentencing Ex. 2) at 1:33 - Colton circled in yellow*

Colton remained in the Rotunda and near the Rotunda Interior Doors for approximately a half hour.  *See* ECF No. 34 at ¶ 14.  He left the U.S. Capitol building only after being forcibly pushed towards the exit at approximately 3:30 p.m.

Colton was arrested in the Eastern District of California on December 15, 2023.

*The Charges and Plea Agreement*

On September 24, 2024, the United States charged Colton by Information with violating 18 U.S.C. § 1752(a)(2).  On October 2, 2024, pursuant to a plea agreement, Colton pled guilty to the Information.  By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Kyle Colton now faces sentencing for violating 18 U.S.C. § 1752(a)(2). As noted by the plea agreement and the U.S. Probation Office, Colton faces up to one year of imprisonment and a fine of up to $100,000.  Colton must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

## IV.    The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. U.S.S.G. § 4C1.1 provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. While the Government concedes that Section 4C1.1 applies to Colton, the Court should vary upward by two levels to account for the reduction under 4C1.1. An upward variance is necessary because the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the

defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions"). Thus Colton's conduct caused a significant disruption to a vital governmental function, warranting an upward variance. *See United States v. Eicher*, No. 22-cr-038 (BAH), Sentc'g Hrg. Tr. at 48 (varying upward by two levels to offset the Section 4C1.1 reduction).

With a two-level upward variance, the sentencing guidelines calculation will be as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2A2.4) | 10 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Adjustment based on U.S.S.G. §4C1.1 | -2 |
| Total Adjusted Offense Level | 6 |
| *Upward Variance* | +2 |
| **Revised Total Adjusted Offense Level** | **8** |

The U.S. Probation Office calculated Colton's criminal history as a zero (e.g. category I). PSR at ¶ 48. Accordingly, the U.S. Probation Office calculated Colton's total adjusted offense level, after acceptance, at 6, and his corresponding Guidelines imprisonment range at 0-6 months. PSR at ¶ 81. Colton's plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation.

## V.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. As described below, the Section 3553(a) factors weigh in favor of 3 months' incarceration, plus 12 months of supervised release, 100 hours of community service, and $500 in restitution.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).  The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters."  *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).  While assessing Colton's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Colton, the absence of violent or destructive acts is not a mitigating factor. Had Colton engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Colton's case is long time he spent inside the U.S. Capitol building and his blatant disregard for USCP and MPD officer's efforts to clear the U.S. Capitol.  Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Colton's History and Characteristics

As set forth in the PSR, Colton does not currently have any criminal convictions.  However, Colton has been charged with receipt of child pornography and is pending trial in the Eastern District of California.  PSR ¶ 51.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a

political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Although Colton has no prior criminal history, his decision to participate in the events of January 6, 2021, to enter the U.S. Capitol Building during the riot, and to contribute to the chaos inside calls for substantial deterrence. There are appropriate ways to express one's political opinions; participating in a riot targeted at Congress' certification of the Electoral College vote

was not one of those ways. This Court should impose a custodial sentence that is sufficient to satisfy the need to specifically deter Colton from future criminal conduct.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Colton based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Colton has pled guilty to a violation of 18 U.S.C. § 1752(a)(2), disorderly and disruptive conduct in a restricted building or grounds. This is a Class A misdemeanor. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), apply.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case. In *United States v. Harris*, 21-cr-274 (RDM), the defendant also pled guilty to a violation of 18 U.S.C. § 1752(a)(2). Harris witnessed violence between rioters and police officers outside of the U.S. Capitol Building and decided to enter anyway. Like Colton, Harris entered the Capitol building shortly after a door was breached and traveled through multiple locations inside the Capitol, including the Rotunda. Harris used a

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

megaphone inside the Rotunda to start a call-and-response chant with other rioters, yelling "Whose house? Our house!" and like Colton, refused police officers' commands to leave the Rotunda. Harris pushed an officer on one occasion, and stayed inside the Rotunda until he and other rioters were forced out.  Harris later bragged on social media about his participation in the attack on the Capitol and told the FBI that if he had it all to do it again, he would do it the same way.  This Court sentenced to Harris to 7 months' incarceration.

In *United States v. Suleski*, 21-CR-376 (RDM), the defendant pleaded guilty to violations of 18 U.S.C. § 1752(a)(1), unlawful entry into a restricted facility, and 18 U.S.C. § 641, theft of government property.  Suleski entered the Capitol through the Upper West Terrace door just minutes after the door was breached.  While inside, Suleski watched and video recorded with his mobile telephone as rioters inside confronted the police.  Suleski wandered the hallways around the House Gallery with other rioters and attempted to open closed and locked doors, before  rifling through and stealing papers from outside an office.  Suleski exited the building after approximately fifteen minutes.  When interviewed by the FBI prior to his arrest, Suleski not only lied about the violence that he saw and about taking any papers from the building, he also actively concealed his cell phone from law enforcement officials, despite a search and seizure warrant for the phone.  The Court sentenced Suleski to 60 days' incarceration. Notably, while both Colton and Suleski fell within the guidelines range of 0-6 months, Colton was inside the U.S. Capitol building for much longer than Suleski, and also blatantly ignored police commands to leave the Capitol and had to be physically pushed in order to exit.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d

14

220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## VI.   Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Colton must pay $500 in restitution, which reflects in part the role Colton played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Colton's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 104.

## VII.    Fine

Colton's conviction for a violation of 18 U.S.C. § 1752(a)(2), disorderly and disruptive conduct in a restricted building or grounds subject him to a statutory maximum fine of $100,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider Colton's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1).

The burden is on Colton to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994). Here, probation opined that Colton does not have the ability to pay a fine. *See* PSR ¶ 79.

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VIII.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Colton to 3 months' incarceration, plus 12 months of supervised release, 100 hours of community service, and $500 in restitution.

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

</div>

By:    _s/ Sonia W. Murphy_
SONIA W. MURPHY
Senior Trial Counsel, U.S. Department of Justice
Detailed to the United States Attorney's Office
601 D Street, NW
Washington, DC 20001
D.C. Bar No. 483072
202-305-3067
Sonia.Murphy@usdoj.gov